## ENOCH SANBORN *v.* JAMES HAMILTON.

Trover will lie against an officer, who takes property upon an execution, which is, by law, exempt from attachment.

In such action, brought against the officer by the execution debtor, who is the owner of the property attached, the property being exempt from attachment, the writ need *not* be served upon the officer eighteen days before the return day.

If a debtor, being possessed of several cows, sell all but one, and, that one being attached, and sold on execution, bring trover against the attaching officer, the question may be submitted to the jury, whether the sale of the other cows was

Sanborn *v.* Hamilton.

intended to operate an actual transfer of the property, or was merely colorable, not intended to change the ownership. It is not sufficient, to entitle the defendant to recover, to prove merely that the sale of the other cows was fraudulent in fact; for, if so, those cows might be taken by the creditors of the plaintiff.

TROVER for a cow. The defendant pleaded in abatement, that the action was commenced against him for taking, as deputy sheriff, the plaintiff's only cow, and that the writ was not served upon him eighteen days before the return day. To this plea the plaintiff demurred, and the court adjudged the plea insufficient. Exceptions by defendant. The defendant then pleaded the general issue. Trial by jury,—ROYCE, J., presiding.

On trial, the taking of the cow by the defendant having been proved, the defendant proved, that he took the cow, as deputy sheriff, by virtue of legal process against the plaintiff, and sold her on execution. The plaintiff then offered to prove, that the cow in question was his last and only cow; to which the defendant objected, but the evidence was admitted by the court. The evidence tended to prove, that the plaintiff, in January, 1842, and previous to the taking of the cow in question by the defendant, sold four other cows and other property to his son, who had just arrived at the age of twenty one years, and that his son paid the value of the property to the plaintiff's creditors,—thus leaving only the cow in question in possession of the plaintiff. The defendant then introduced evidence, tending to prove, that the sale from the plaintiff to his son was fraudulent in fact and in law, and proved, that, in the spring of 1842, one Paddock caused one of the cows, claimed to have been sold by the plaintiff to his son, to be sold on execution in his favor against the plaintiff; that one Boardman bid off the cow, at the request of the plaintiff, or his son; that Boardman never paid the bid, and never expected to, but the plaintiff paid it to the officer who sold the cow. The plaintiff then gave evidence tending to prove, that an action of trespass was commenced by his son against the officer, who sold the cow on Paddock's execution; that the suit was discontinued, it being agreed, that the plaintiff should pay Paddock's debt, and that his son should have the cow,—each party paying their own cost; and that the plaintiff afterwards paid to the officer the amount of Boardman's bid for the cow, as above stated.

Sanborn *v.* Hamilton.

The defendant contended, that, under the circumstances above stated, the cow sold on Paddock's execution, being proved to have been in the plaintiff's possession at the time the defendant attached and sold the cow in question in this suit, became the plaintiff's property by force of the sale on Paddock's execution, and that therefore the cow, for which this suit was brought, was not the plaintiff's only cow. But the court charged the jury, that neither the attachment and sale, nor the payment of the bid by the plaintiff, as above mentioned, would make the plaintiff the owner of that cow.

The defendant requested the court to charge the jury, that, if the sale was fraudulent in fact from the plaintiff to his son, this would entitle the defendant to a verdict ; but the court refused so to instruct the jury, but did charge them, that, if the sale was intended, by the plaintiff and his son, to be and operate as an actual transfer of the property to the son, it would be sufficient to entitle the plaintiff to recover for the cow in question ; but that, if the sale was merely colorable, and not designed to effect an actual change of ownership, and to transfer the property to the son, the defendant would be entitled to a verdict.

Verdict for plaintiff. Exceptions by defendant.

*C. W. Prentiss* for defendant:

1. The plaintiff's writ should have been served eighteen days before the return day. The case in 14 Vt. 391, is not decisive of the present case. That case proceeded upon the ground, in part, that the plaintiff was not a party to the original process. Here he was. The only cause of action, in this suit, is for the taking, on the original process, of property of the plaintiff, which was, as the plaintiff claims, exempt from attachment. This was " misconduct " in the defendant. It is not necessary, that this misconduct should be counted upon in the declaration ; the question is, whether it is the substantial matter in the case.

2. The second inquiry is, whether the defendant could set up the sale from the plaintiff to his son, fraudulent in fact. A conveyance, made with a design to defraud creditors, is void *ab initio.* 15 Johns. 586. In *Preston* v. *Crofut,* 1 Conn. 527, under a statute against fraudulent conveyance, of which I suppose ours is a copy, the doctrine is established, that a *bona fide* purchaser, for full value, without

notice, from a fraudulent grantee, gets no title. And the ground taken is, that in the statute of Elizabeth there is an express saving, and so in the New York statute, which is a copy of the statute of Elizabeth, for the case of such purchasers, but none in Connecticut, and there is none in ours. And see *Ricker* v. *Ham et al.*, 14 Mass. 137; 5 Day 341.

*S. Sumner* for plaintiff.

1. The defendant was not entitled to eighteen days notice of the suit. No complaint is made, in the declaration, of any default, neglect, or misconduct, of the defendant in his office; but he "is sued as an ordinary *tort-feasor.*" *Johnson* v. *Rice*, 14 Vt. 391. Rev. St. 180, § 10.

2. It has been repeatedly decided, that trespass will lie for taking property exempt from attachment; *Dow* v. *Smith*, 7 Vt. 465; and trover is a concurrent remedy with trespass for a wrongful taking of property; 1 Sw. Dig. 533; 1 Chit. Pl. 154, 157; 14 Vt. 391.

3. As to the question of fraud in law in the sale from the plaintiff to his son,—the plaintiff's right to recover for this, his last cow, does not depend upon the fact, that he had in his possession another cow, which, although he did not own her, might yet be liable to be attached by his creditors. *Dow* v. *Smith*, 7 Vt. 465. The question of fraud in fact was settled by the jury.

The opinion of the court was delivered by

Williams, Ch. J. The principles, which must govern the decision of this case, have been so fully established in repeated cases, that it is only necessary to refer to them, in order to determine this case.

In the case of *Dow* v. *Smith*, 7 Vt. 465, it was decided, that for taking property in execution, which, by statute, is exempt, trespass is the proper action.

In the case of *Johnson* v. *Rice*, 14 Vt. 391, it was determined, that, in an action of trespass against an officer, for taking property on an execution not against the plaintiff, but twelve days notice is necessary. The distinction, which has been attempted to be taken between that case and this, is more subtle than sound. The officer, in both cases, was acting without the authority of his process, and

was not justified thereby, and is therefore to be considered as though he had no such process. He is not sued in his official capacity, and, indeed, could not be. His "misconduct" was not in his "office," but because he departed from his duty, and acted, as it were, without any process, and became a trespasser thereby. The plea in abatement was properly overruled.

The other question, presented in this case, was also decided in *Dow* v. *Smith*. The only question, which could be raised on this point, was, whether the plaintiff was the owner of any other cow, but the one, for the taking of which this action was brought; and this was submitted to the jury. If the sale of the other cows was fraudulent, they were liable to be taken by the creditors of the plaintiff and by this defendant. This point was decided in the case last mentioned; and it appears too obvious, to require any farther elucidation.

It is not necessary to examine the case of *Preston* v. *Crofut*, 1 Conn. 527, in note, any farther than to remark, that, in this state, it has been always considered, that an innocent purchaser from a fraudulent grantee, without any knowledge of the fraud, acquired a valid title by his purchase; that the dissenting opinion of SMITH, J., in that case, has been considered as the correct law on that subject; and that the case of *Preston* v. *Crofut*, has been disregarded. The case before us does not require an examination of that case.

We are satisfied with the directions given to the jury in the county court, and their judgment is affirmed.